Harold **ENGDAHL**, Patricia Engdahl, Kim Engdahl and Jill Engdahl, minors by their parents and next of friends, Harold Engdahl and Patricia Engdahl, Plaintiffs,

v.

CITY OF KENOSHA, WISCONSIN, Motion Picture Board of Appeals for the City of Kenosha, Wisconsin, Wallace E. Burkee, individually and as Mayor of the City of Kenosha, Fred Moeller, individually and as president of the Common Council for the City of Kenosha, Wisconsin, and ex officio member of the Motion Picture Board of Appeals, Robert Bosman, individually and as chief of police for the City of Kenosha, Wisconsin, and ex officio member of the Motion Picture Board of Appeals, their agents, assistants, successors, employees and attorneys, and all persons acting in concert or cooperation with them, Defendants.

Civ. A. No. 70–C–372.

United States District Court,
E. D. Wisconsin.

Sept. 29, 1970.

Terry W. Rose, Kenosha, Wis., for plaintiffs.

Burton A. Scott, City Atty., and Michael S. Fisher, Asst. City Atty., Kenosha, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

This case involves a constitutional challenge to Section 11.111 of the Code of General Ordinances of the City of Kenosha, Wisconsin, which appears as an appendix to this opinion. Section 11.111 prohibits persons under the age of 18 years from viewing "adult" motion pictures. Plaintiffs have commenced this action for declaratory and injunctive relief on their own behalf and on behalf of all other persons similarly situated.

Jurisdiction is claimed under Title 28 U.S.C., §§ 1343(3) and (4), 2201, and 2202; Title 42 U.S.C., § 1983; and the First and Fourteenth Amendments to the United States constitution, and I find that jurisdiction is present. The plaintiffs assert denial of rights guaranteed by the First and Fourteenth Amendments. The plaintiffs have the requisite standing to pursue this action, and there is present a genuine case or controversy.

This case is before this court at the present time for decision regarding plaintiffs' motion for a preliminary injunction. The issue has been briefed by the parties, and a hearing was held on September 17, 1970. This opinion and order is limited to the issue of preliminary injunctive relief.

From the record, the following facts and allegations emerge: Plaintiffs, husband and wife, and their children who are under 18 years of age reside in Kenosha, Wisconsin. On July 1, 1970, they, with three young friends of the children, went to see the movie "Woodstock" at the Lake Theater in Kenosha. The parents of the guest children had given their consent. "Woodstock" has been rated "R" by the motion picture industry. An employee of the Lake Theater refused to admit the young people because they did not have birth certificates indicating their parentage. The plaintiffs and their friends went home without seeing "Woodstock."

Section 11.111 of the Code of General Ordinances of Kenosha states at B:

"No person, firm, association, corporation or other legal entity shall admit minors to any adult motion picture; nor shall any minor attend any adult motion picture."

The term "adult motion picture" is defined at § 11.111–A–2 as being:

" * * * any motion picture which is rated under the Rating Program of the Motion Picture Association of America in a category recommending that minors, unaccompanied by a parent or guardian, be denied admission."

Section 11.111–C creates a "Board of Appeals." The function of this board is to hear requests by citizens for re-classification of movies. That is, if a movie is rated "X" and a citizen believes that it should be rated something else, he can petition the Board of Appeals to have the rating changed. Section 11.-111–C provides that the board shall make its decisions based upon the "Standards of Review" contained in § 11.111–D of the ordinance. Section 11.111–D, togeth-er with § 11.111–A which contains cer-tain "definitions," is to furnish the standards to be utilized by the Board of Appeals in making their classification decisions. An exception to the general prohibition provides that a minor may at-tend an "adult motion picture" if accom-panied by a parent, guardian, or spouse.

Hence, the ordinance operates as fol-lows: Movies are rated by the Motion Picture Association of America which is a private association independent of and having no connection with the City of Kenosha. If a movie is rated "R" or "X" by this private agency, then the ad-mission of minors is prohibited unless they are accompanied by a parent, guard-ian, or spouse. If a Kenosha citizen dis-agrees with the judgment exercised by the Motion Picture Association as to the character of a particular film, he may pe-tition the Board of Appeals to have the film reclassified.

The plaintiffs claim, among other things, that § 11.111 is vague, indefinite, incorporates unknown standards, and is an improper prior restraint on the exer-cise of their rights under the First Amendment to the Constitution. They contend that the "ratings" of the Mo-tion Picture Association, embodied in § 11.111, constitute impermissible censor-ship regarding what they may and may not view at a theater. I find the likeli-hood that plaintiffs will succeed in these contentions on the merits to be substan-tial.

■ I have little doubt that the provi-sions of § 11.111 constitute a prior re-straint on the exercise of First Amend-ment freedoms. I also have little doubt that the prior restraint embodied in § 11.111 will be found, upon trial of the is-sue, to constitute a constitutionally im-permissible prior restraint. "Any sys-tem of prior restraints of expression comes to this Court bearing a heavy pre-sumption against its constitutional va-lidity." Bantam Books v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

■ The defendants maintain that they are merely "classifying" and not "censoring." I disagree. A prior re-straint on First Amendment rights does not have to be total to be impermissible.

The plaintiffs do not contend that all censorship exercised in behalf of minors is impermissible or that minors may not be subjected to standards of "obscenity" which differ from those applied to adults. See Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Rather, plaintiffs contend that the mode of censorship and the application of standards in this case is constitutionally impermissible. Based on the present rec-ord, I agree.

With regard to the issue of standards, a major infirmity of § 11.111 is that the standards apply at the wrong place. The standards contained within the ordinance are not utilized to judge initially wheth-er or not a particular motion picture is to be classified as "adult" and, thus, pro-hibited to minors. This determination as to what is proper for minors in Kenosha is made by a private agency, the Motion Picture Association of America. It was conceded at the hearing upon the present motion that *if* the Motion Picture Asso-ciation utilized any standards whatso-ever in reaching its judgments as to what is an "adult" movie, the defendants are not aware of what these standards are. The standards and definitions contained within § 11.111 are used by the city only when a citizen takes it upon himself to petition the Board of Appeals for a change in a movie's rating by this pri-vate agency. This places the burden up-on the wrong party. " * * * [T]he

burden of proving that the film is unprotected expression must rest on the censor." Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed2d 649 (1965).

Bantam Books v. Sullivan, supra, involved a challenge to Rhode Island legislation which established a commission to deal with the problems of juvenile delinquency. The Rhode Island commission had informed certain book and magazine merchants as to whether or not publications and literature handled by them were "objectionable" or not and intimated that if the dealers did not voluntarily remove such "objectionable" material from their places of business, legal actions would be taken. In finding these actions of the Rhode Island commission impermissible, the Supreme Court stated:

> "Thus, the Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. It is characteristic of the freedoms of expression in general that they are vulnerable to gravely damaging yet barely visible encroachments. Our insistence that regulations of obscenity scrupulously embody the most rigorous procedural safeguards, (citations omitted), is therefore but a special instance of the larger principle that freedoms of expression must be ringed about with adequate bulwarks. (Citations omitted.) '[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated * * * is finely drawn. * * * The separation of legitimate from illegitimate speech calls for * * * sensitive tools. * * *' (Citation omitted.)" *Id.*, 372 U.S. at 66, 83 S.Ct. at 637.

The teaching of the cases in this area is that a prior restraint, such as the one embodied in the provisions of § 11.111, is " * * * tolerated * * * only where it operate[s] under judicial superintendence and assure[s] an almost immediate judicial determination of the validity of the restraint." *Bantam Books,* supra, at 70, 83 S.Ct. at 639. See also Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). In this case, the judgment as to what is protected or unprotected expression with regard to minors is not even exercised by the City of Kenosha. Rather, the judgment is reached by the Motion Picture Association using standards and procedures, if any, known only to them and unknown to both the defendants and this court. The procedures utilized by the City of Kenosha in imposing a prior restraint on First Amendment freedoms, albeit with regard only to persons under age 18, do not meet the constitutional requirements of governmental regulation of obscenity.

For the reasons set forth above, I find the likelihood of plaintiffs' ultimate success on the merits to be sufficiently strong to warrant the granting of preliminary injunctive relief. When the relative equities of the parties are balanced, I do not find the result to dictate denial of equitable relief. First Amendment rights are sacred and are of paramount importance. Plaintiffs allege that the exercise of their First Amendment rights is deterred by the existence of § 11.111 and the consequent possibility of prosecution for violating its provisions. In these circumstances, the possible deterrent effect of § 11.111 with regard to First Amendment freedoms constitutes sufficient irreparable injury to warrant injunctive relief.

The foregoing opinion and order constitutes my findings of fact and conclusions of law in accordance with Rule 52 (a) of the Federal Rules of Civil Procedure.

Accordingly, for the reasons stated above and on the basis of the entire record herein,

It is hereby ordered that defendants, their agents, assistants, successors, employees, and attorneys and all persons acting in concert or in cooperation with them are restrained from enforcing §

11.111 of the General Code of Ordinances of the City of Kenosha pending resolution of the merits of this case.

ORDINANCE NO. ———

BY: ALD. PAUL W. SAFTIG

*Ordinance Prohibiting Minors from Attending Adult Movies*

The Common Council of the City of Kenosha, Wisconsin, do ordain as follows:

*Section One:* That Section 11.111 of the Code of General Ordinances be, and the same hereby is, created and enacted to read as follows:

"11.111—Minors Prohibited from Attending Adult Motion Pictures.

A. Definitions.

1. 'Minor' as used in this section means any person under the age of 18 years.

2. 'Adult Motion Picture' means any motion picture which is rated under the Rating Program of the Motion Picture Association of America in a category recommending that minors, unaccompanied by a parent or guardian, be denied admission.

3. 'Nudity' means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

4. 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast.

5. 'Sexual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

6. 'Sadomasochistic abuse' means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

B. Prohibition.

No person, firm, association, corporation or other legal entity shall admit minors to any adult motion picture; nor shall any minor attend any adult motion picture.

C. Board of Appeals.

1. There is hereby created a Motion Picture Board of Appeals which shall have jurisdiction to hear and decide appeals which have been properly presented to said Board requesting the removal of a particular motion picture from a category which is restricted to adults and prohibited to minors.

2. The Motion Picture Board of Appeals shall consist of the following six members: the Chief of Police and the president of the Common Council, who shall be ex officio members; one representative of the clergy of the City of Kenosha, one representative of the School District administrative staff and, two citizens, one male and one female. Members, other than the ex officio members, shall be appointed by the Mayor, subject to confirmation by the Common Council, for a three-year term commencing on July 1st of the year in which appointed. Vacancies on the Board shall be filled for an unexpired term in the same manner as an original appointment.

3. Officers and Quorum.

a. The Board of Appeals shall meet during the month of July, immediately following the appointment of new members and shall select a chairman and a secretary from among its members.

b. Four members of the Board shall constitute a quorum.

c. The Board shall convene at the call of either the chairman or the secretary.

4. Procedures Governing Appeals.

a. All appeals shall be initiated by a petition, in writing, filed with the City Clerk who shall immediately notify the chairman or the secretary of the Board of Appeals.

b. Upon receiving a petition, the chairman shall convene the Board within forty-eight (48) hours of the filing of same, for the purpose of conducting a public hearing on said appeal and the Board shall render its decision within twenty-four (24) hours of the close of the public hearing. The Board may, at the request of the petitioner, adjourn the hearing from time-to-time.

c. The Board shall keep minutes of the substance of its proceedings, a copy of which shall be promptly filed with the City Clerk after a decision is rendered.

d. Decisions shall be rendered by a vote of a majority of the members present.

e. In reaching its decision, the Board shall judge the motion picture in question in accordance with the standards contained in ss. D. of this Ordinance.

f. The Board of Appeals may, in its discretion, adopt additional rules and regulations not in conflict with this Ordinance and in conformance with the traditional concept of due process.

D. Standards of Review.

1. The Board of Appeals shall not approve of a motion picture to be shown to minors until it specifically makes a finding that said motion picture is not harmful to minors. 'Harmful to Minors' is hereby defined to mean that quality of any description or representation, in whatever form of nudity, sexual conduct, sexual excitement or sado-masochistic abuse, when it:

a. Predominantly appeals to the prurient, shameful or morbid interest of minors; and

b. Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and

c. Is utterly without redeeming social importance for minors.

E. Exceptions.

Nothing in this Ordinance shall prohibit a minor from attending any movie when said minor is accompanied by a parent, guardian or spouse.

F. Severability.

Should any section, clause or provision of this Ordinance be declared by the courts to be invalid, the same shall not affect the validity of the Ordinance as a whole or any part thereof, other than the part so declared to be invalid."